# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1924

_____

Rebecca Cravens,

          Appellant,

v.

Blue Cross and Blue Shield
of Kansas City,

          Appellee.

\*
\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Western District of Missouri
\*
\*
\*

_____

Submitted: November 17, 1999

Filed: June 7, 2000

_____

Before McMILLIAN, FAGG and MORRIS SHEPARD ARNOLD, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Rebecca Cravens appeals from a final order entered in the United States District Court for the Western District of Missouri granting summary judgment in favor of Blue Cross & Blue Shield of Kansas City ("BCBS") on her claim pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Missouri Human Rights Act (MHRA), R.S. Mo. § 213.055.1 (1994). See Cravens v. Blue Cross & Blue Shield, No. 98-0410-CV-W-2 (W.D. Mo. Mar. 18, 1999) (summary judgment order)

(hereinafter "slip op."). For reversal, Cravens argues that summary judgment was improper because there was a genuine issue of material fact as to (1) whether Cravens was a "qualified individual with a disability" within the meaning of the ADA; and (2) whether BCBS failed to comply adequately with its duty under the ADA to engage in an interactive process with Cravens with respect to reasonable accommodation. For the reasons discussed below, we reverse the district court's order and remand for further proceedings consistent with this opinion.

## Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. §§ 1331 and 1367. Jurisdiction in the court of appeals is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

Rebecca Cravens was an eighteen-year employee of BCBS, working for the company in different capacities from 1977 until October 31, 1995. In late 1993 or early 1994, she assumed the position of Senior Operations Specialist, a claims processing position which required Cravens to spend a substantial part of her time "keying" or typing claim information into BCBS' computer system.[1] See slip op. at 2.

In June 1995 Cravens sought medical treatment for pain in her wrists. Her doctors placed her under a temporary restriction to avoid repetitive motion and, specifically, to refrain from "keying." As a result of this restriction, Cravens was unable to perform all of her duties as Senior Operations Specialist. Accordingly, during

---

[1] Cravens estimates that keying comprises at least 50% of her job duties, see Joint Appendix (hereinafter "App."), vol. II, at 256 (Cravens deposition), whereas BCBS contends that 90-95% of the job is keying. See id., vol. I, at 137 (Pam Weil affidavit).

June and July 1995, BCBS gave Cravens a series of temporary, "no keying" assignments, including filing, photocopying, stuffing envelopes, answering patient referral telephone calls, pulling microfilm, and helping other departments. See id.

On July 28, 1995, Cravens was diagnosed with bilateral carpal tunnel syndrome and thus permanently restricted to no or minimal keyboard activity. On August 16, 1995, Cravens met with Pam Weil, her supervisor, and Lola Griffey, a BCBS human resources department representative. At this meeting, Cravens was told that she had ten to twelve weeks to find another BCBS position (with no keying requirement) via the internal application process available to all employees. BCBS agreed to retain Cravens in her limited duty position in the meantime, with the understanding that her employment would be terminated if she were unable to secure another job within the company. See id. at 2-3. Later that same day, Cravens forwarded a memorandum to Griffey relating her understanding of the meeting and requesting "as much assistance as possible" from Griffey and the human resources department in obtaining another job within BCBS. Joint Appendix (hereinafter "App."), vol. II, at 309 (memorandum from Cravens to Griffey).

On September 25, 1995, Weil informed Cravens that, because she was unable to key, and because her department had no permanent non-keying positions available, Cravens would soon be replaced by a new employee who could "key in" claims. See slip op. at 3. Cravens was eventually terminated on October 31, 1995. See App., vol. II, at 310 (letter from Weil to Cravens).

On January 2, 1998, Cravens filed this action in Missouri state court, alleging violations of Title I of the ADA as well as the MHRA. Specifically, Cravens claimed that she was discriminatorily discharged after BCBS failed to accommodate her disability by reassigning her or helping her locate another position within the company or both. BCBS removed the case to federal court and moved for summary judgment.

The district court granted summary judgment in favor of BCBS, holding that Cravens had failed to establish a prima facie case of discrimination under the ADA. Specifically, the district court determined that Cravens had not generated a factual dispute as to whether she was a "qualified individual with a disability" within the meaning of the ADA. As the district court noted, Cravens could not perform the essential "keying" function of the Senior Operations Specialist position given her medical restriction; moreover, she could not show that any reasonable accommodation (other than reassignment to another position) was available to remedy her situation. See slip op. at 6. As to the argument that reassignment constituted a mandatory reasonable accommodation under the ADA and corresponding Equal Employment Opportunity Commission (EEOC) guidelines, the district court was persuaded that:

> reassignment can be used as a means of accommodating a disabled employee when accommodating him [or her] in his [or her] current position is possible, but difficult for [the] employer. It follows that when it is not at all possible to accommodate an employee in his [or her] current position, there is no obligation to reassign.

Id. at 8-9 (emphasis included in original) (quoting Smith v. Midland Brake, Inc., 138 F.3d 1304, 1308 (10th Cir. 1998), rev'd and remanded, 180 F.3d 1154 (1999) (en banc)). According to the district court, because Cravens could not claim entitlement to such an accommodation, she therefore could not be a "qualified individual with a disability." See id. at 9.

Even assuming *arguendo* that such a reassignment duty existed under the ADA, the district court held that summary judgment was nonetheless warranted because Cravens had not created a genuine issue of material fact about whether reassignment would have been a reasonable accommodation in the instant case. Specifically, the district court determined that she had failed to identify any vacant positions which existed within BCBS at the time of her termination and for which she was qualified. See id. at 11. Finally, the district court held that it was beyond genuine dispute that

-4-

BCBS had adequately engaged in an interactive process with Cravens in an attempt to provide her reasonable accommodation, see id. at 13, and that BCBS was not required under the ADA to identify alternative positions for her, assess her qualifications, notify her of available jobs, or "automatically plac[e] her in the position of her choice to the exclusion of other equally qualified persons." Id. at 14. This appeal followed.

## Discussion

We review decisions to grant summary judgment *de novo*, applying the same standards as did the district court, see Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995), and affirming only when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). We view all evidence in the light most favorable to the non-moving party and recall that, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994). However, summary judgment is proper if the plaintiff fails to establish any element of his or her prima facie case. See Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998).

Statutory Background:

Title I of the ADA bars employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA further defines discrimination to include

not making reasonable accommodations to the known physical or mental

-5-

limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . .

Id. § 12112(b)(5)(A). As the statutory language indicates, ADA protection extends only to a "qualified individual with a disability," namely, "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).

Thus, to establish a prima facie case of discrimination under the ADA, an aggrieved employee must show that he or she (1) is disabled within the meaning of the ADA, (2) is qualified (with or without reasonable accommodation) to perform the essential functions of the job at issue, and (3) has suffered an adverse employment decision because of the disability. See Treanor v. MCI Telecommunications Corp., 200 F.3d 570, 574 (8th Cir. 2000). The determination of qualification involves a two-fold inquiry: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation. See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1111-12 (8th Cir. 1995) (Benson). Although the employee at all times retains the burden of persuading the trier of fact that he or she has been the victim of illegal disability discrimination, "once the plaintiff makes 'a facial showing that reasonable accommodation is possible,' the burden of production shifts to the employer to show that it is unable to accommodate the employee." Id. at 1112 (quoting Mason v. Frank, 32 F.3d 315, 318-19 (8th Cir. 1994)).

Qualified Individual with a Disability / Reassignment as Reasonable Accommodation:

We have carefully reviewed the record in the present case and the parties' arguments on appeal. It is undisputed that Cravens is disabled within the meaning of the ADA and that, absent reasonable accommodation, she was unable to perform the

-6-

essential functions of her position as Senior Operations Specialist. It is also undisputed that BCBS could not have reasonably accommodated her within that position so as to enable her to do her job despite her blanket "no keying" restriction. Instead, the only reasonable accommodation that would have allowed Cravens to continue working for BCBS was reassignment to another position within the company.

As stated supra, 42 U.S.C. § 12111(8) defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." BCBS initially argues that Cravens does not fall within the scope of this statutory definition because she cannot perform, with or without reasonable accommodation, the essential functions of the job she "holds," namely that of Senior Operations Specialist. As to the phrase "or desires," BCBS maintains that this language seeks to prevent discrimination in hiring and advancement and thus applies only to job applicants, not to individuals seeking reassignment. We disagree.

Although a "qualified individual with a disability" must be someone who can perform the essential functions of a job, the terms of § 12111(8) do not limit the "qualified individual" inquiry to the individual's existing job. Instead, the scope of the statute plainly includes a disabled individual who can perform a company job that said individual "desires." Id. Thus, on its face, § 12111(8) appears to include current employees with a disability who seek or desire transfer to another position within the company.

This understanding is reinforced when we consider § 12111(8) in the context of § 12111(9), which lists "reassignment to a vacant position" as a reasonable accommodation. By its very construction, the term "reassignment" implies that the disabled individual already holds an existing assignment and must therefore be a current employee, rather than a job applicant. The legislative history confirms such a reading:

Reasonable accommodation may also include reassignment to a vacant position. If an employee, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker.

H.R. Rep. No. 101-485 (II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345. We further note that, if BCBS's restrictive reading were adopted instead, the only employees eligible for reassignment would be those otherwise qualified for their existing positions and with no apparent need for reassignment. "With this background in mind, it is the more natural reading of 'of desires' to apply the phrase more broadly than just to job applicants." Smith v. Midland Brake, Inc., 180 F.3d 1154, 1164 (10th Cir. 1999) (en banc) (Smith); accord Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1301 (D.C. Cir. 1998) (en banc) (Aka) ("An employee seeking reassignment to a vacant position is thus within the definition [of 'qualified individual with a disability'] if, with or without reasonable accommodation, she can perform the essential functions of the employment position to which she seeks reassignment.").

BCBS next argues that reassignment is not a mandatory accommodation under the ADA and, as such, Cravens cannot claim entitlement to reassignment when she admittedly cannot do her current job. BCBS stresses that the ADA, its implementing regulations, and its legislative history all use the term "may," instead of "should" or "must," when describing "reasonable accommodation." See 42 U.S.C. § 12111(9) (providing that "reasonable accommodation" "may include . . . reassignment to a vacant position."); 29 C.F.R. § 1630.2(o)(2) ("Reasonable accommodation may include but is not limited to . . . reassignment to a vacant position . . . ."); H.R. Rep. No. 485 (II), at 63 (1990) ("Reasonable accommodation may also include reassignment to a vacant position."). BCBS contends that this "permissive" language indicates that employers have the option, not the obligation, to accommodate employees through reassignment. See Brief for Appellee at 26. Accordingly, BCBS argues, several circuits have rejected such a mandate. See Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir.

1997) (holding that judgment as a matter of law in favor of employer was proper because the employer "would not be obligated to accommodate [the employee] by reassigning him [or her] to a new position."); <u>Myers v. Hose</u>, 50 F.3d 278, 284 (4th Cir. 1995) (<u>Myers</u>) (holding on summary judgment that "the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his [or her] present position.").

Finally, BCBS claims that, at most, employers are obligated only to <u>consider</u> reassignment in a narrow band of cases, namely where "accommodation is possible but not desirable to the employer." Brief for Appellee at 23 (construing language in 29 C.F.R. § 1630.2(o) that "reassignment should be considered only when accommodation with the individual's current position would pose an undue hardship").[2] BCBS admits such a duty to consider reassignment as a reasonable accommodation was implicitly recognized in <u>Fjellestad v. Pizza Hut of America, Inc.</u>, 188 F.3d 944, 950-51 (8th Cir. 1999) (<u>Fjellestad</u>), where we found that the plaintiff had created a genuine issue of material fact as to whether the employer could have reassigned her to a specific, vacant position.

We recognize that reassignment may not be required of employers in every instance. However, the language of the statute, the regulations, and the legislative

---

[2] BCBS also asserts that requiring employers to reassign employees who cannot perform the essential functions of their current jobs would "necessarily transform the ADA from an anti-discrimination statute into an affirmative action law requiring that a preference be given to disabled employees over other applicants for the same position," contrary to the purposes of the ADA. Brief for Appellee at 28. In the instant case, we need not decide this very different question of whether an otherwise qualified disabled employee should be automatically awarded a position over other qualified applicants. <u>See, e.g.</u>, <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154, 1167-70 (10th Cir. 1999) (en banc).

history does clearly indicate that, in certain circumstances, reassignment may be necessary as a reasonable accommodation; consideration of reassignment is merely a component part of the overall reasonable accommodation duty. See Smith, 180 F.3d at 1166. Specifically, we conclude that the definition of "qualified individual with a disability" includes a disabled employee who cannot do his or her current job, but who desires and can perform, with or without reasonable accommodation, the essential functions of a vacant job within the company to which he or she could be reassigned.[3] Such a view of the reassignment duty is well-supported among the circuits. See Jackan v. New York State Dep't of Labor, 205 F.3d 562, 565 (2d Cir. 2000) ("Both the plain language of the statute and a prior decision of this court foreclose [defendant's] argument" that "individuals who are unable to perform the duties of their current positions cannot require their employers to transfer them to other vacant positions which they are capable of performing."); Bratten v. SSI Servs., Inc., 185 F.3d 625, 634 (6th Cir. 1999) ("The ADA plainly states that re-assignment may be required to reasonably accommodate a worker with a disability."); Smith, 180 F.3d at 1167 ("[R]eassignment of an employee to a vacant position within a company is one of the range of reasonable accommodations which must be considered and, if appropriate, offered if the employee is unable to perform his or her existing job."); Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 677 (7th Cir. 1998) (Dalton) ("It is well established under the ADA, the employer's duty reasonably to accommodate a disabled employee includes reassignment of the employee to a vacant position for which she [or he] is qualified."); Willis v. Conopco, 108 F.3d 282, 284 (11th Cir. 1997) ("Reassignment to another position is a required accommodation only if there is a

---

[3] We implicitly adopted such a position in Benson v. Northwest Airlines, Inc., 62 F.3d 1108 (8th Cir. 1995), where we rejected the district court's conclusion that the plaintiff-employee was not a "qualified individual with a disability." Specifically, we noted that, although the employee could not perform his current job as a mechanic, "if [the employer] had a vacant, existing position for which [the employee] qualified, [the employee's] assignment to the position might have been a reasonable accommodation." See id. at 1114.

vacant position available for which the employee is otherwise qualified."). But see Myers, 50 F.3d at 284 ("[T]he duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his [or her] present position.").[4]

Notably, the scope of this reassignment duty is limited by a number of constraints. For one, the very prospect of reassignment does not even arise unless "accommodation within the individual's current position would pose an undue hardship." 29 C.F.R. 1630.2(o). In this sense, reassignment is an accommodation of last resort. See Aka, 156 F.3d at 1301 ("Congress saw reassignment, as the EEOC does, as an option to be considered only after other efforts at accommodation have failed."). Moreover, the disabled employee must be seeking an existing position within the company; the employer is not required to create a new position as an accommodation. See Benson, 62 F.3d at 1114. By the terms of the statute, the existing position must be vacant.[5] See id.; 42 U.S.C § 12111(9) (listing "reassignment to a vacant position" as a "reasonable accommodation"). Thus, an employer is not required to "bump" another employee in order to reassign a disabled employee to that position. See White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir. 1995); H.R. Rep. No. 101-485(II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345 ("The Committee also wishes to make clear [that] reassignment need only be to a vacant position – 'bumping'

---

[4] Myers has been sharply criticized for basing its proposition on case law now apparently superseded by statute. See Bratten v. SSI Servs., Inc., 185 F.3d 625, 633 (6th Cir. 1999) (noting the Myers Court's reliance on Rehabilitation Act cases which preceded the statute's 1992 amendment to include "reassignment to a vacant position" as a reasonable accommodation); Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir. 1996) (similarly criticizing Myers).

[5] The term "vacant position" not only includes positions that are presently vacant, but also those that the employer reasonably anticipates "will become vacant in a short period of time." Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1187 (6th Cir. 1996).

another employee out of a position to create a vacancy is not required."). Notably, promotion is not required; "[a]n employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available." Cassidy v. Detroit Edison Co., 138 F.3d 629, 634 (6th Cir. 1998); 29 C.F.R. 1630, app. § 1630.2(o). Further, the employer is not obligated to provide the accommodation requested or preferred by the employee; the reassignment need only be a "reasonable" accommodation. See 42 U.S.C. §§ 12111(9), 12112(b)(5)(A); Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996).

Importantly, the employee must be otherwise "qualified" for the reassignment position. See Benson, 62 F.3d at 1114; 42 U.S.C. § 12111(9)(B). To be considered "qualified" for this job, the individual must "satisfy the legitimate prerequisites for that alternative position, and . . . be able to perform the essential functions of that position with or without reasonable accommodations . . . [though] in this context the term [reasonable accommodation] logically cannot include transfer to yet a third job." Dalton, 141 F.3d at 678. With respect to these qualifications, the employer is generally not required to transfer a disabled employee if such a reassignment would violate either "a legitimate, nondiscriminatory policy of the employer," id. at 679, or "the contractual rights of other workers under a collective bargaining agreement." Benson, 62 F.3d at 1114. Finally, reassignment must not create an "undue hardship" on the employer. 42 U.S.C. §§ 12111(10), 12112(5)(A).

In the instant case, Cravens initially identified three positions to which she contends she could have been reassigned, including that of telecommunications specialist. The district court found that Cravens had not facially demonstrated that reassignment to any of these three positions would have been a reasonable accommodation, namely because she had not proffered evidence that any of the three positions were permanent or that she was qualified for any of them. See slip op. at 11.

However, in her suggestions in opposition to BCBS's motion for summary judgment, Cravens clearly stated that she met the prerequisites and could perform the essential job functions of the telecommunications position. See App., vol. II, at 349-50 (Cravens affidavit); id., vol. II, at 354 (job posting for "telecommunications coordinator"). Moreover, she identified nine other positions within the company that were apparently vacant at the time of her termination.[6] See id., vol. II, at 350, 352 (Cravens affidavit); id., vol. II, at 355-63 (job postings for nine different company positions). Although Cravens was unaware of these job openings at the time of her termination,[7] she stated that she could have performed the essential functions of each of these positions despite her "no keying" restriction. See id., vol. II, at 350. In addition to ignoring Cravens's assessment of her qualifications for the telecommunications position, the district court failed to discuss any of these other nine identified job openings.

Cravens has generated a genuine issue of material fact as to whether BCBS could have reassigned her to either the telecommunications position or one of the other nine identified jobs. Her sworn statements that she met position requirements, her submission of relevant job postings, as well as her apparently competent performance of BCBS job duties for close to twenty years create a fact question as to whether she was qualified for any of the identified positions (including that of telecommunications specialist) and whether reassigning her to one of these positions would be a reasonable accommodation. See Fjellestad, 188 F.3d at 950-51; Benson, 62 F.3d at 1115. Thus,

---

[6] It is not entirely clear from the record whether the telecommunications position was permanent or not; however, the job posting does list "publish[ing] a quarterly inter-office phone directory" among the position responsibilities, which implies some kind of permanency. See App., vol. II, at 354 (emphasis added). The other nine positions list annual salary scales and appear permanent in nature. See id. at 355-63.

[7] Cravens asserts that these job openings may not have been posted on the job board in her building and thus she "would have no opportunity to see them." App., vol. II, at 350-51.

-13-

summary judgment is inappropriate at this time. Notably, our decision on this issue does not improperly relieve Cravens of her burden to prove that reasonable accommodation was possible. See Fjellestad, 188 F.3d at 956.

Interactive Process with Respect to Reassignment:

BCBS claims that it "adequately engaged in an interactive process with Cravens attempting to provide her reasonable accommodation." Slip op. at 13. BCBS notes that vacant job postings were generally available to Cravens and that she had the opportunity to apply for specific positions through BCBS's internal application procedure, which Cravens admittedly did not use. Further, BCBS found a series of temporary tasks for Cravens to perform while the extent of her disability was assessed and while she looked for alternative positions she could perform. Accordingly, BCBS argues that it is beyond genuine dispute that BCBS was not acting in bad faith and that its interactive process duties were completely fulfilled. We disagree.

Although there is no per se liability under the ADA if an employer fails to engage in an interactive process, we have previously noted that, for the purposes of summary judgment,

> the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith. Under these circumstances, we feel a factual question exists as to whether the employer has attempted to provide reasonable accommodation as required by the ADA.

Fjellestad, 188 F.3d at 952. To establish that an employer failed to participate in an interactive process, a disabled employee must show: (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the

-14-

employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. See id.

Applying this analysis to the instant case, we hold that Cravens has created a genuine issue of fact about whether BCBS failed to participate in the interactive process. For one, BCBS was fully apprised of Cravens's disability and had received several notes from her physicians indicating the extent of her impairment and containing various work restrictions, including the eventual "no keying" limitation. See App., vol. II, at 301-03, 305-07. BCBS was also aware that she was not performing her job to expectations in light of her recent impairment. See id., vol. II, at 304 (memorandum from Weil to Cravens).

Second, Cravens specifically requested assistance in locating an available position within the company. See id., vol. II, at 309 (memorandum from Cravens to Griffey) ("I feel it necessary to ask you and the Human Resources Department in whole for as much assistance as possible in acquiring a new position that allows me to remain an employee of this company . . . . I feel that the knowledge and skills attained over the past 18 years are an asset and can be valuable resources to the company. I sincerely request your assistance in locating any position that could utilize any or all of these resources. . . . Any and all assistance toward the retention of my employment with this company is greatly appreciated."). Once Cravens made this request, BCBS was required to initiate an interactive process with her to determine the appropriate reasonable accommodation. See Fjellestad, 188 F.3d at 952.

Third, viewing the evidence in the light most favorable to Cravens, we believe that a genuine dispute exists as to whether BCBS "made a good faith effort to engage in the interactive process, and that a reasonable jury could conclude that [the employer] has not met its burden to engage in an interactive process to determine whether an appropriate reasonable accommodation existed." Id. Granted, BCBS did give Cravens interim work tasks when she could not perform the functions of her position as Senior

Operations Specialist; BCBS also gave general notice as to the availability of vacant jobs and the internal application procedure.  However, Cravens presented evidence that, when she requested assistance in locating a job within the company, she was told by Griffey, the human resources representative, that "they no longer had to help me so they wouldn't."  App., vol. II, at 272.  After Cravens identified the telecommunications position as a possibility for transfer and informed Griffey of her interest in the job, Griffey allegedly said that she would take care of it.  See id., vol. II, at 352.  Cravens further asserts that, when she tried to continue the process, Griffey failed to respond to Cravens's repeated phone messages and attempted visits.  See id., vol. II, at 277.  Cravens additionally claims that she asked for assistance in identifying alternative positions from other members of the human resources department and received minimal help in that regard.  See id., vol. II, at 285.  In short, there is at least an issue of fact as to whether BCBS failed to satisfy its obligation to interact actively with Cravens in the search for an appropriate accommodation.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 316 (3d Cir. 1999) ("[W]hile an employee who wants a transfer to another position ultimately has the burden of showing that he or she can perform the essential functions of an open position, the employee does not have the burden of identifying open positions without the employer's assistance.  'In many cases, an employee will not have the ability or resources to identify a vacant position absent participation by the employer.'") (quoting Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997) (Mengine)); Aka, 156 F.3d at 1304 n.27 (noting that an employer has a "corresponding obligation to help [an employee] identify appropriate job vacancies (since [employees] can hardly be expected to hire detectives to look for vacancies)"); Dalton, 141 F.3d at 677 ("[T]he ADA places a duty on the employer to ascertain whether [the employer] has some job that the employee might be able to fill.") (internal quotation marks omitted).  The breakdown in communications that apparently occurred in the present case is especially troubling in a large company like BCBS, where workers "may not be aware of the range of available employment opportunities."  Mengine, 114 F.3d at 420.

Finally, assuming BCBS acted in bad faith by failing to engage in such an interactive process, BCBS has produced no evidence that reassigning Cravens to either the telecommunications position or one of the other nine identified positions would have created an undue hardship.

Thus, we hold that the district court erred in granting summary judgment for BCBS, because "there is a genuine dispute as to whether the employer acted in good faith and engaged in the interactive process of seeking reasonable accommodations." Fjellestad, 188 F.3d at 953.

### Conclusion

We therefore reverse the district court's order and remand the case to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.