399 F.3d 904
 Joyce McVAY, as Administrator of the Estate of Glenn McVay, Deceased, Plaintiff — Appellant,
v.
SISTERS OF MERCY HEALTH SYSTEM, St. Louis; St. Joseph's Mercy Health Center, Defendants,
Frank Sears, in his individual and official capacity as a police officer for the City of Hot Springs, Arkansas; City of Hot Springs, Arkansas, Defendants — Appellees,
Bethany McGraham, M.D.; Dana Ramsey, R.N., Defendants.
 No. 03-3948.
 United States Court of Appeals, Eighth Circuit.
 Submitted: September 17, 2004.
 Filed: March 4, 2005.
 
 COPYRIGHT MATERIAL OMITTED Brian Wayne Ray, argued, Little Rock, AR, for appellant.
 Jeanette Denham, argued, North Little Rock, AR, for appellee.
 Before LOKEN, Chief Judge, BEAM, and SMITH, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 Joyce McVay, in her capacity as administrator of the estate of her deceased son Glen McVay, appeals the district court's[1] grant of summary judgment to Hot Springs, Arkansas, police officer Frank Sears and the City of Hot Springs on the 42 U.S.C. § 1983 claim she asserted against them. We affirm.
 
 I. BACKGROUND
 
 2
 We state the following relevant facts in the light most favorable to McVay. See, e.g., Brosseau v. Haugen, ___ U.S. ___, ___ n. 2, 125 S.Ct. 596, 597 n. 2, 160 L.Ed.2d 583 ("Because this case arises in the posture of a motion for summary judgment, we are required to view all facts and draw all reasonable inferences in favor of the nonmoving party...."). Frank Sears is an officer with the Hot Springs, Arkansas, police department. On August 25, 2001, Sears worked as a security guard for St. Joseph's Mercy Health Center in Hot Springs. He wore a Hot Springs police uniform, a gun, a badge, and handcuffs. That morning, Glen McVay was brought to the hospital's emergency room by ambulance with symptoms consistent with alcohol withdrawal, including disorientation and lack of mental control. At around 11:00 a.m., Nurse Dana Ramsey requested that Sears find McVay who had wandered from his hospital room. When Sears found him, McVay had pulled out his intravenous tube and appeared to be talking to imaginary people. Sears thought McVay was perhaps under the influence of an unknown substance, told him he was under arrest, and began to escort him back to his room.
 
 
 3
 When the two reached McVay's room, McVay refused to enter, and instead darted toward the exit doors leading to the ambulance bay. Sears gave chase. The exit consists of two sets of double-doors made of glass and steel. The first set automatically opened when McVay approached. Sears knew, however, that the second set of doors was locked and that they were not going to open for McVay. Sears reached McVay between the two sets of doors, grabbed him, and the two fell to the floor. McVay hit his head, cutting his left eyebrow. Sears placed McVay under arrest for failure to comply with a lawful order and for public intoxication. McVay was returned to his room where Sears monitored him as McVay continued to hallucinate. McVay died eight days later, on September 2, 2001, of hypoxic encephalopathy caused by an acute subdural hematoma from blunt-force head trauma.
 
 
 4
 McVay's mother, Joyce, in her capacity as administrator of the estate of her son, brought suit against Sears and the City of Hot Springs under 42 U.S.C. § 1983, and also sued the Sisters of Mercy Health System, St. Louis; St. Joseph's Mercy Health Center; Dr. Bethany McGraham; and Dana Ramsey on Arkansas state medical negligence claims. Joyce settled her medical negligence claims, but proceeded with the section 1983 action against Sears and the City. Both defendants moved for summary judgment, which was granted by the district court. The district court found that Joyce had failed to present a prima facie case of a constitutional violation that resulted from a municipal custom or policy on the part of the City. It further found that Sears was entitled to qualified immunity because his conduct did "`not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McVay v. Sisters of Mercy Health Sys. St. Louis, No. 02-6160 (W.D.Ark. Oct. 31, 2003) (order granting summary judgment) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). McVay appeals the district court's order.
 
 II. DISCUSSION
 A. Standard of Review
 
 5
 We review a grant of summary judgment de novo, "applying the same standards as did the district court and affirming only when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law." Cravens v. Blue Cross and Blue Shield, 214 F.3d 1011, 1016 (8th Cir.2000) (citation omitted).
 
 B. Qualified Immunity
 
 6
 The district court granted summary judgment to Sears on McVay's section 1983 claim based on qualified immunity. Section 1983 provides for a civil action against any person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.
 
 
 7
 Qualified immunity shields government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As such, it is "`an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). It is a doctrine that strikes a balance between the "vindication of constitutional guarantees," as afforded by section 1983, and effective public service, by reducing "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [public] officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
 
 
 8
 In Saucier, the Supreme Court made clear the framework a court must follow in a qualified immunity inquiry.[2] The threshold question asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201, 121 S.Ct. 2151. If those facts, once established, would not amount to a constitutional violation, the inquiry ends. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. That inquiry "must be undertaken in light of the specific context of the case," id., so that "the rule of qualified immunity" does not become "a rule of virtually unqualified liability simply by [plaintiffs] alleging violation of extremely abstract rights." Anderson, 483 U.S. at 639, 107 S.Ct. 3034. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S.Ct. 2151. "[T]he reasonableness of the official's conduct under the circumstances is a question of law." Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir.2001).
 
 
 9
 Here, we need not inquire beyond the first step of the Saucier analysis. We hold, taking the facts alleged in the light most favorable to McVay, that there was no constitutional violation.
 
 
 10
 McVay argues Sears violated her son's Fourth Amendment right to be free from an unreasonable seizure by employing excessive force in stopping him from exiting the hospital. A seizure for Fourth Amendment purposes occurs when a government actor" `by means of physical force or show of authority, ... in some way restrain[s] the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) (first alteration in original). It is clear on the facts of this case that Sears seized McVay by restraining his liberty by physical force.
 
 
 11
 Claims of excessive use of force by law enforcement in the course of seizing a person are to be analyzed under the Fourth Amendment's reasonableness standard. Id. at 394, 109 S.Ct. 1865. An officer's "underlying intent or motivation" in carrying out the seizure is irrelevant. Id. at 397, 109 S.Ct. 1865. In determining whether the amount of force used is reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396, 109 S.Ct. 1865 (quotation omitted). This analysis requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id."The `reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Finally, judges must allow for the fact that police officers often make split-second decisions about the amount of force necessary in tense, uncertain, and rapidly changing circumstances. Id. at 396-97, 109 S.Ct. 1865.
 
 
 12
 McVay argues that Sears intentionally forced McVay to the floor in a "tackle." We give the injured party the benefit of the doubt, asking, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201, 121 S.Ct. 2151.
 
 
 13
 Given the circumstances in this case, including the fact that McVay was disoriented and exhibiting signs of lacking mental control, that he was barreling toward glass doors that Sears knew would not open, and the rapid pace of events as Sears raced to reach McVay before McVay reached the locked doors, even if Sears forced McVay to the floor in a "tackle," doing so was not an excessive use of force. It is clear that McVay posed a threat at least to himself. Given McVay's impaired state, had McVay reached the second set of doors, he would have crashed into the glass, potentially injuring himself severely. A reasonable officer on the scene would have recognized the danger posed to McVay and taken whatever action he could to help him avoid it. As tragic as McVay's death is, it is only a 20/20 hindsight analysis which Graham counsels against that leads to the conclusion that the use of force led to the fall, the fall led to the head trauma, and the head trauma led to McVay's death, and therefore the force used by Sears was excessive. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396, 109 S.Ct. 1865 (citation omitted). The result in this case, McVay's tragic death, cannot transform the actions Sears took under the circumstances into an actionable claim under section 1983.
 
 
 14
 Because we find that the facts alleged, viewed in the light most favorable to McVay, do not establish a constitutional violation, we need not proceed with the remainder of the qualified immunity analysis. The district court's grant of summary judgment to Sears was proper.
 
 C. The Prima Facie Case
 
 15
 McVay also sued the City of Hot Springs under section 1983, claiming that Sears was acting pursuant to a municipal custom or policy that resulted in the constitutional violation. "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution...." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Since we have found that Sears' actions were not unconstitutional, McVay cannot make a prima facie case against the City under section 1983. Thus, the district court's grant of summary judgment to the City was proper.
 
 III. CONCLUSION
 
 16
 For all these reasons, we affirm the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas
 
 
 [2]
 Indeed, given the district court's brief order in this case, we are unable to determine exactly the basis for the grant of qualified immunity. Our review is de novo and thus not affected by the court's brevity, but district courts are reminded thatSaucier provides the sequential framework that should be applied in analyzing claims of qualified immunity.