2010 OK CIV APP 118

**Marilyn Sue GOFF, Plaintiff/Appellant,**

**v.**

**SALAZAR ROOFING & CONSTRUCTION, INC., an Oklahoma Corporation, and Robert Maulpin, individually, a/k/a Robert Maupin, Defendants/Appellees,**

**and**

**Salazar Roofing & Construction USA, Inc., an Oklahoma Corporation; and/or a/k/a and/or d/b/a Salazar Roofing Corporation, an Oklahoma Corporation; and/or a/k/a and/or d/b/a d/b/a Salazar Contracting, Inc., an Oklahoma Corporation, Defendants.**

**No. 107,722.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 24, 2010.

Michael L. Velez, Michael L. Velez, LLC, Oklahoma City, OK, and Jacque Bergman–Pearsall, Jacque Pearsall, P.L.L.C, Oklahoma City, OK, for Appellant.

Warner E. Lovell, Oklahoma City, OK, for Appellees.

JERRY L. GOODMAN, Judge.

¶ 1 Marilyn Sue Goff (Goff) appeals the trial court's October 7, 2009, order granting Salazar Roofing & Construction, Inc. (Salazar) and Robert Maupin's (Maupin) (collectively "Appellees") motion for summary judgment.[1] Goff further appeals a December 4, 2009, order awarding Appellees an attorney's fee and costs in the amount of $15,755.09.

Based upon our review of the facts and applicable law, we affirm in part and reverse in part.

## FACTS

¶ 2 In September of 2008, Salazar hired Goff, purportedly by its agent or employee Maupin, to work in its Norman satellite office as a secretary. Goff and Maupin were the only employees located in the Norman office. After working in the office for several weeks, an incident occurred between Goff and Maupin on November 6, 2008, resulting in Goff's employment ending with Salazar. The parties dispute whether Goff was terminated. Goff filed suit against Appellees pursuant to the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. § 12111 *et seq.*[2] She further asserted claims for assault, negligent hiring, training, and supervision of Maupin, and intentional infliction of emotional distress.

¶ 3 Goff alleged that after her employment with Salazar began, Maupin started acting in an increasingly intimidating, demeaning, and erratic manner towards her, saying things like "What's up dog?" or "What's up, girl dog." Goff noted she is diabetic, she has to eat at regular intervals throughout the day, and that Maupin demeaned and humiliated her about eating and the smell of her food, stating "God that stinks. What is that? Man that stinks."[3] On one occasion, Goff, her husband, and her grandson were eating fried chicken in the office. Maupin came in and said "What's that smell? It stinks. What stinks?" Goff admitted no one prevented her from eating multiple times throughout the day, although she tried to eat when Maupin was out of the office.

¶ 4 On the morning of November 6, 2008, Maupin arrived at the office and said,

---

1. In the trial court's October 7, 2009, order granting Appellees summary judgment the court noted the following parties had been dismissed without prejudice: Salazar Roofing & Construction, USA, Inc., Salazar Roofing Corporation, and Salazar Contracting, Inc.

2. The ADA Amendments Act of 2008 (ADAAA), Pub.L.No. 110–325, 122 Stat. 3553 (2008), applies to employment decisions made on or after January 1, 2009. The ADAAA reverses two seminal Supreme Court cases, *Toyota Motor Mfg.,* *Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), and *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Because the employment action Goff complains of occurred prior to January 1, 2009, the ADAAA is not applicable and *Toyota Motor Mfg.* and *Sutton* are still applicable.

3. Goff was diagnosed with diabetes in October of 1996.

"What's up, girl dog." Goff did not respond. After a while Maupin asked Goff if she was okay. A few minutes later, Maupin stated "Look, why don't you just take the rest of the day off? Just go home. Just get the f* * * out and don't come back." Goff was stunned. Maupin continued, "Look, I don't have to take your shit, I don't have to take your attitude. You're not going to treat me like this and get away with it. I got you this job." Maupin then drew his left fist back and Goff stepped back around the desk, twisting her back, causing immediate pain. Goff did not fall down, bump, or hit anything. In addition, Maupin did not hit or otherwise touch Goff. Maupin left the office.

¶ 5 Goff contacted the Norman office and told them Maupin had fired her. Goff also contacted her husband and told him the events of the morning. Goff called the Norman office again and spoke with another person, whom she also told Maupin had fired her. Maupin then returned to the office and asked her again if she was okay. Goff informed Maupin she was not okay. Maupin asked her to stay and explained he had been upset earlier because of a client who refused to pay. Goff was thrilled because she thought she had her job back. Maupin left again. Goff contacted the Norman office and informed them she had been rehired. When Maupin returned, he and Goff's husband had a verbal altercation in the parking lot over Goff and Maupin's earlier quarrel. Goff gathered up her belongings and left, subsequently filing suit against Appellees.

¶ 6 On April 1, 2009, Appellees filed a motion for summary judgment or in the alternative a motion to dismiss, asserting, *inter alia,* that Goff had failed to allege a disability under the ADA or that her impairment was the basis or cause of her injury or damages. Goff filed a response on April 16, 2009, asserting material questions of facts remained precluding summary judgment. Goff contended a rational juror could find she has a disability, i.e., her complications from diabetes cause her to be disabled under the ADA, and Salazar discriminated against her when it terminated her employment. Goff requested the court hold its ruling in abeyance pending additional discovery.

¶ 7 After discovery was completed, Appellees filed a motion to dismiss for lack of jurisdiction and a renewed motion for summary judgment on August 13, 2009. Appellees asserted Goff's suit falls within the purview of the workers' compensation laws, more specifically 85 O.S.2001 and Supp.2006, § 11, because Goff alleged she sustained an injury to her back at work. In addition, Appellees asserted none of the exceptions in § 11(A) applied and thus, Goff was not entitled to seek relief in district court.

¶ 8 With respect to its summary judgment motion, Appellees again asserted Goff could not prove a disability under the ADA or that her physical impairment formed the basis which she claims caused her injury or damages. Appellees noted Goff alleged her diabetes caused her to have a disability in the nature of having to eat at regular intervals and having pain in her feet and legs when required to stand for prolonged periods of time. However, Goff testified in her deposition that Appellees permitted her to bring food to work and that no one prevented her from eating on the job. In addition, Goff testified her job as a secretary allowed her to sit to fulfill her duties. Moreover, Goff never described the events leading up to the purported termination on November 6 to include her alleged disability as a cause or factor.

¶ 9 Goff filed a response on August 31, 2009, asserting a question of fact existed as to whether an exception existed under § 11(A). With respect to her ADA claim, Goff again asserted a material question of fact existed as to whether her diabetes was a disability and whether Appellees discriminated against her on the basis of this disability. Thus, Goff asserted summary judgment was inappropriate.

¶ 10 By order dated October 7, 2009, the trial court granted Appellees' motion to dismiss for lack of jurisdiction "[s]ubject to [Goff's] right to file a claim in the Workers' Compensation Court.... [I]n the event that the Workers' Compensation Court ... does not accept jurisdiction of [Goff's] claim pertaining to her alleged injuries of November 6, 2008 and following, [Goff] shall be entitled to revive her claim for assault and intentional infliction of emotional distress in this Court."

The court further granted Appellees' motion for summary judgment on Goff's cause of action for a violation of the ADA "[f]or the reason that the facts of this case when given the weight most favorable to [Goff] does not bring [Goff's] claim against [Appellees] within the scope of the [ADA] of 1990. The Court finds [Goff] was either not disabled and/or did not suffer any adverse employment action as defined by the [ADA] of 1990." The trial court subsequently entered an order awarding Appellees' an attorney's fee and costs in the amount of $15,755.09. Goff appeals.

## STANDARD OF REVIEW

¶ 11 We review the award of summary judgment *de novo,* giving no deference to the trial court's legal rulings. *Copeland v. Lodge Enters., Inc.,* 2000 OK 36, ¶ 8 fn. 11, 4 P.3d 695, 699 fn. 11. Summary judgment is only appropriate when the pleadings, affidavits, depositions, admissions and other evidentiary materials establish there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at ¶ 8, 4 P.3d at 699.

## ANALYSIS

¶ 12 On appeal, Goff contends the trial court erred in granting Appellees' summary judgment on her ADA claim because the issue of whether she has a disability and whether Appellees discriminated against her based on this disability is a question of fact to be decided by the trier of fact.[4]

### I. *Americans With Disabilities Act*

¶ 13 A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a *prima facie* case. *Cody v. County of Nassau,* 577 F.Supp.2d. 623, 637 (E.D.N.Y.2008). To establish a claim under the ADA, Goff must establish the following: 1) she is a disabled person within the meaning of the ADA; 2)

---

4. Goff did not appeal the trial court's order granting Appellees' motion to dismiss for lack of jurisdiction on her remaining claims.

5. Neither party has contested this element of the ADA claim.

she is qualified to perform the essential functions of the job with or without a reasonable accommodation;[5] and 3) she suffered an adverse employment action because of her disability. *Id.,* see also *Diaz Rivera v. Browning–Ferris Indus. of Puerto Rico, Inc.,* 626 F.Supp.2d. 244, 254 (D.P.R.2009); *Cravens v. Blue Cross & Blue Shield of Kansas City,* 214 F.3d 1011, 1016 (8th Cir.2000).

¶ 14 If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *Cody,* 577 F.Supp.2d. 623, 637 (citations omitted). The employer merely needs to explain what it has done. *Id.* (citations omitted). "Should the employer satisfy its burden, the analysis is complete and 'the presumption [of discrimination], having fulfilled its role of forcing the defendant to come forward with some [non-discriminatory] response, simply drops out of the picture.' " *Id.* (citations omitted). The "ultimate burden" resides with the plaintiff, who must prove "the employer's proffered reason is merely a pretext for its intentional discrimination." *Id.* (citations omitted). "If the plaintiff cannot prove intentional discrimination motivated by [her] disability, then the defendant is entitled to summary judgment." *Id.* (citations omitted).

### A. Disability

¶ 15 "The *sine qua non* requirement for ADA protection is whether the individual has a 'disability' as defined by the ADA." *Diaz Rivera v. Browning–Ferris Indus. of Puerto Rico,* 626 F.Supp.2d. 244, 254 (citing *Castro–Medina v. Procter & Gamble Comm. Co.,* 565 F.Supp.2d 343, 358 (D.P.R. 2008)). The statute's definition of "disability" includes: "(A) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment." [6] *See* 42 U.S.C. § 12102(2); 29

---

6. Goff has not alleged she has a record of an impairment or that Appellees regarded her as disabled. In fact, on page 7 of Goff's Response to Appellees' First Motion for Summary Judgment or in the Alternative, Motion to Dismiss, Goff contended her diabetes was a disability un-

C.F.R. § 1630.2(g). Major life activities are those activities of central importance to life. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)(Overturned by Legislative Action in Pub.L. 110–325 (2009)). "Major life activities include functions such as caring for one's self, performing manual tasks, walking, seeing, standing, hearing, speaking, breathing, learning, and working." *Walton v. U.S. Marshals Serv.,* 492 F.3d 998, 1010 (9th Cir.2007) (quoting *Bragdon v. Abbott,* 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540); see also 29 C.F.R. § 1630.2(i).

¶ 16 Furthermore, "to constitute a disability, an impairment must not merely affect a major life activity, it must 'substantially limit' that activity." *Cody,* 577 F.Supp.2d. 623, 639 (citations omitted). To be substantially limiting, an impairment must cause a person to be "unable to perform a major life activity that an average person in the general population can perform," or to be significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that major life activity. 29 C.F.R. § 1630.2(j); *Ramirez v. Salvation Army,* 2008 WL 670153 (N.D.Cal.2008).

¶ 17 In the present case, Goff asserts her diabetes substantially limits one (1) or more of her major life activities, including eating, seeing, working, and walking. Whether an individual's diabetes constitutes a disability under the ADA is an individualized inquiry.[7]

¶ 18 We find Goff has raised a genuine issue of material fact as to whether her diabetes substantially limits one (1) or more of her major life activities. Goff asserts she is required to eat several small snacks during the day in addition to three (3) regular meals; she has to constantly monitor her blood sugar levels; she is required to take medication to maintain her blood sugar lev-

els; her diabetes is so severe it has resulted in neuropathy in her feet; she suffers from numbness or tingling in her feet and has fallen; her mobility is limited; and she can become weak and dizzy without warning. Based on this evidence, we find a jury could conclude Goff has a physical impairment which substantially limits one (1) or more of her major life activities and thus, she is a disabled person under the ADA. Therefore, the trial court erred in granting Appellees' motion for summary judgment on this ground.

**B. Adverse Employment Action[8]**

¶ 19 Goff did not, however, present sufficient evidence to establish the third element of her *prima facie case, i.e.,* that she suffered an adverse employment action because of her disability. Although Goff presented evidentiary material that Maupin harassed, demeaned, or intimidated her about eating and complained about the smell of her food, she presented no evidence that she was terminated because of it. Goff testified that on the morning of November 6, 2008, Maupin arrived at the office, said "What's up, girl dog," and then asked her if she was okay. Maupin subsequently stated "Look, why don't you just take the rest of the day off? Just go home. Just get the f* * * out and don't come back." Goff was stunned. Maupin continued, "Look, I don't have to take your shit, I don't have to take your attitude. You're not going to treat me like this and get away with it. I got you this job." Maupin then drew his left fist back and Goff stepped back around the desk, twisting her back, causing immediate pain. Goff did not fall down, bump, or hit anything. In addition, Maupin did not hit or otherwise touch Goff. Maupin later returned to the office and asked Goff to stay, explaining he had been upset because a client refused to pay. Goff testi-

---

der subsection (A) only. As a result, this Court will only address subsection (A).

**7.** Diabetes by itself does not constitute a disability under the ADA unless it impairs an individual's ability to work or engage in other major life activities. *Diaz Rivera,* 626 F.Supp.2d 244, 254 fn. 9 (D.P.R.2009) (citing *Scheerer v. Potter,* 443 F.3d 916, 919 (7th Cir.2006)("[D]iabetic status,

*per se,* does not qualify a plaintiff as disabled under the ADA.")).

**8.** As previously noted, neither party contested the second element of the ADA claim, *i.e.,* that Goff was qualified to perform the essential functions of the job with or without a reasonable accommodation.

fied she was thrilled because she thought she had her job back. Maupin left the office again and when he returned, Maupin and Goff's husband quarreled in the parking lot, at which time Goff gathered up her belongings and left.

¶ 20 Based on the record before the court, there is no evidence Goff was terminated because of a disability. Although there is evidence in the record Maupin did not care for the smell of Goff's food and had previously commented on it, there is absolutely no evidence in the record that this had anything to do with the events of November 6, 2008. Rather, the evidence provides that on the day in question, Maupin was irritable when he entered the office and that he and Goff had a heated, verbal altercation that ended with Goff leaving Salazar's employment. There is no indication Goff was eating when the altercation occurred or that her disability had anything to do with the adverse employment action. Consequently, Goff has failed to establish the third element of her ADA claim and the trial court correctly entered summary judgment for Appellees. The trial court's order granting Appellees summary judgment is therefore affirmed in accordance with this opinion.

## II. An Attorney's Fee and Costs

¶ 21 Goff further appeals the trial court's December 4, 2009, order awarding Appellees an attorney's fee and costs in the amount of $15,755.09.

■■■■ ¶ 22 On October 7, 2009, Appellees sought an attorney's fee and costs pursuant to the ADA. The ADA provides a trial court may, in its discretion, allow a reasonable attorney's fee and costs to a prevailing party. *See* 42 U.S.C. § 12205. This language is analogous to a provision governing an attorney's fee in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). Thus, courts have applied the same standard to both Acts. See *Parker v. Sony Pictures*

*Ent., Inc.,* 260 F.3d 100, 111 (2nd Cir.2001)(citing *Bercovitch v. Baldwin Sch., Inc.,* 191 F.3d 8, 10–11 (1st Cir.1999); *Bruce v. City of Gainesville,* 177 F.3d 949, 951 (11th Cir.1999)). With respect to a prevailing defendant, a fee should only be awarded when a plaintiff's "claim was frivolous, unreasonable, or groundless, or … the plaintiff continued to litigate after it clearly became so." *Id.* (citing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). This standard is necessary to avoid the chilling effect such fees could have upon a plaintiff's commencement of ADA claims. *Palmer v. Chelsea Fin. Ptnshp., LP,* 423 F.Supp.2d 1092, 1093 (E.D.Cal.2006).

¶ 23 A trial court's decision granting or denying fees and costs will be reversed when it abuses its discretion. See *American Fed'n of State, County, and Mun. Employees, AFL–CIO (AFSCME) v. County of Nassau,* 96 F.3d 644, 650 (2nd Cir.1996). We find such an abuse here.

¶ 24 In the present case, the trial court did not make the requisite finding that Goff's claim was frivolous, unreasonable, or groundless, or that Goff continued to litigate after it clearly became so, thereby entitling Appellees to fees and costs. Accordingly, the trial court's December 14, 2009, order granting Appellees an attorney's fee and costs pursuant to the ADA is reversed.

¶ 25 AFFIRMED IN PART, REVERSED IN PART.

GABBARD, P.J., concurs; RAPP, J., not participating.