**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LAURA D. FERNANDEZ,<br>　　　　　Appellant, | DOCKET NUMBER<br>DE-0432-20-0096-I-3 |
| 　　　v. | |
| DEPARTMENT OF THE INTERIOR,<br>　　　　　Agency. | DATE: February 22, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joshua C. Black, Esquire, Phoenix, Arizona, for the appellant.

Miranda Poonai, Washington, D.C., for the agency.

Ryan W. Burton, Lakewood, Colorado, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The agency has filed a petition for review of the initial decision, which reversed the appellant's removal for unacceptable performance under 5 U.S.C. chapter 43 and found that the appellant proved her affirmative defenses of disability discrimination and reprisal. Generally, we grant petitions such as this

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED: (1) concerning the basis for reversing the appellant's removal; (2) to apply the Board's decision in *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, to the appellant's claims of discrimination and retaliation; and (3) regarding the analysis of the appellant's claim of denial of reasonable accommodation, we AFFIRM the initial decision.

## BACKGROUND

The appellant was formerly employed by the agency as a GS-12 Financial Administration Specialist. *Fernandez v. Department of the Interior*, MSPB Docket No. DE-0432-20-0096-I-1, Initial Appeal File (IAF), Tab 23 at 18. On June 24, 2019, the appellant's supervisor issued her a notice of opportunity to demonstrate acceptable performance (NODAP), the agency's equivalent of a performance improvement plan (PIP), which stated that the appellant's performance was unacceptable in critical element 3 of her position related to preparing budget documents. *Id.* at 116-19. The NODAP afforded the appellant 30 days to demonstrate acceptable performance beginning on June 25, 2019. *Id.* By letter dated July 31, 2019, the appellant's supervisor notified her that she had

successfully completed the opportunity to demonstrate acceptable performance. *Id.* at 114. In the letter, her supervisor advised the appellant that she must continue to perform at the fully successful level in critical element 3 for 1 year after the issuance of the NODAP or risk removal for unacceptable performance. *Id.* Thereafter, on October 10, 2019, the appellant's supervisor issued the appellant a notice of proposed removal based on the appellant's post-NODAP performance, which she charged had again declined to an unacceptable level in critical element 3. *Id.* at 104-08. After the appellant responded to the proposal notice, *id.* at 23-103, the deciding official issued a decision sustaining the proposed removal, effective November 9, 2019, *id.* at 19-22.

The appellant filed a Board appeal challenging her removal and raised affirmative defenses of disability discrimination (disparate treatment and denial of reasonable accommodation) and reprisal for engaging in equal employment opportunity (EEO) activity. IAF, Tabs 1, 9. After holding the appellant's requested hearing, the administrative judge issued an initial decision reversing the appellant's removal. *Fernandez v. Department of the Interior*, MSPB Docket No. DE-0432-20-0096-I-3, Appeal File, Tab 7, Initial Decision (ID). The administrative judge found that the agency failed to show that the appellant's performance prior to the issuance of the NODAP was unacceptable as required by the decision of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1363 (Fed. Cir. 2021). ID at 12. The administrative judge further found that the appellant proved that her disability and EEO activity were motivating factors in her removal. ID at 13-29.

The agency has filed a petition for review to which the appellant has responded. Petition for Review (PFR) File, Tabs 9, 14.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency failed to show that the appellant's performance prior to the issuance of the NODAP was unacceptable.</u>

At the time the agency removed the appellant, the applicable law required that, to prevail in a performance-based action under chapter 43, the agency prove the following by substantial evidence: (1) the Office of Personnel Management approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards were valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her an adequate opportunity to demonstrate acceptable performance; and (5) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 13. While the appeal was pending before the Board, the Federal Circuit issued its decision in *Santos* requiring that, to prevail in a chapter 43 action, an agency must also prove that prior to being placed on a PIP the appellant's performance was unacceptable in a critical element.[2] *Santos*, 990 F.3d at 1363. The Board has held that *Santos* is applicable to all pending cases. *Lee*, 2022 MSPB 11, ¶ 16. As noted, the opportunity to demonstrate acceptable performance is the agency's equivalent to a PIP and we discern no reason why the holding in *Santos* is not applicable here.

The administrative judge found that the agency's performance standards for critical element 3 were invalid because they were vague and generalized and did

[2] Following the decision by the Federal Circuit in *Santos*, the parties agreed to reopen the record to allow for supplemental hearing testimony from the appellant and the appellant's supervisor. *Fernandez v. Department of the Interior*, MSPB Docket No. DE-0432-20-0096-I-2, Appeal File (I-2 AF), Tabs 20, 23. The administrative judge dismissed the appeal without prejudice because of delays necessitated by the representatives' schedules and to facilitate the supplemental proceeding. I-2 AF, Tab 24, Initial Decision.

not permit, to the maximum extent feasible, the accurate appraisal of performance based on objective criteria which were reasonable, realistic, attainable, and clearly stated in writing. ID at 10. She further found, however, that any deficiencies in the performance standards were cured by the NODAP in which the appellant was given specific guidance regarding her completion of seven tasks. ID at 11. The administrative judge then found that under *Santos*, the agency failed to show that the appellant's pre-NODAP performance was unacceptable. ID at 11-13; *see Santos*, 990 F.3d at 1363.

The agency has not challenged the administrative judge's findings regarding the validity of its performance standards, and we discern no error in the administrative judge's general conclusion that the standards are impermissibly vague. Critical element 3 of the appellant's performance standards states that the incumbent of the position, "[p]repares budget documents for assigned projects. Budgetary functions include formulation, presentation, justification and execution for different segments of several budget cycles ongoing simultaneously into budget systems. Completes required budget documents and submits within assigned deadlines. Negotiates new deadlines when necessary with supervisor." IAF, Tab 23 at 140. The fully successful performance level under the critical element requires as follows:

> The employee demonstrates good, sound performance that meets organizational goals. Ensures assignments are completed within specified timeframes. Supervisor is notified of non-routine work issues, alterations, and status. The employee effectively applies technical skills and organizational knowledge to get the job done. The employee successfully carries out regular duties while also handling any difficult special assignments. The employee plans and performs work according to organizational priorities and schedules.

*Id*. Such standards are not tailored to the specific duties of the appellant's position, but rather mirror the agency's benchmark standards applicable to all employees, and do not invoke a general consensus as to what level of

performance the agency expected from the appellant.[3]  *Compare* IAF, Tab 23 at 140 (critical element 3 standards), *with* IAF, Tab 23 at 145 (benchmark standards).

The Board has found such standards invalid.  For example, in *Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶¶ 9-10 (2001), the Board found that generic performance standards that applied to all Coast Guard employees standing alone did not sufficiently permit evaluation based on objective criteria. Similarly, in *Henderson v. National Aeronautics and Space Administration*, 116 M.S.P.R. 96, ¶¶ 20, 22-24 (2011), the Board found that an agency did not establish that an employee failed a PIP when the record did not invoke a general consensus as to what level of performance the agency expected.  Applying these holdings to the instant case regarding the preparation of budget documents, for example, there is nothing indicating the quantity or quality required for such documents, or the rate or frequency of any errors permissible in such documents at the fully successful level.  We acknowledge that an agency need not set specific quotas and that, given the appellant's position as a GS-12 Financial Administration Specialist, a certain amount of subjective judgment on the part of the appellant's supervisor is to be expected.  *See Greer v. Department of the Army*, 79 M.S.P.R. 477, 484 (1988) (recognizing that technical jobs may require performance standards that are more subjective than jobs that are less professional or technical in nature); *see also Wilson v. Department of Health and Human Services*, 770 F.2d 1048, 1055 (Fed. Cir. 1985) (concluding that a

---

[3] The agency's benchmark standards state that performance at the fully successful level requires, among other things, that the employee "demonstrates consistently successful performance that contributes positively to organizational goals" and "effectively applies technical skills and organizational knowledge to deliver results based on measures of quality, quantity, and/or effectiveness within agreed-upon deadlines, keeping the rating official informed of work issues, alterations, and status."  IAF, Tab 23 at 145.  Such standards similarly do not invoke a general consensus as to required performance at the fully successful level and appear to be a general framework assuming more specific performance metrics would be further defined in specific performance standards tailored to each position.

performance standard providing that reports must require "minimum revisions" was sufficiently objective and precise, despite allowing for some subjective judgment on the part of the appellant's evaluators). Nonetheless, we find that the performance standards here fail to invoke a general consensus as to their meaning or provide a firm benchmark toward which the appellant was to aim her performance.

Absent valid performance standards, the Board cannot assess whether the appellant's performance was unacceptable. *See, e.g.*, *Henderson*, 116 M.S.P.R. 96, ¶ 9; *Ortiz v. Department of Justice*, 46 M.S.P.R. 692, 695 (1991); *Williams v. Department of Health and Human Services*, 30 M.S.P.R. 217, 220 (1986). However, when performance standards are vague on their face, the agency may cure the defect by fleshing out the standards through additional oral or written communication. *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 23 (2013). For example, an agency may give content to performance standards by informing the appellant of specific work requirements through written instructions, information concerning deficiencies and methods of improving performance, memoranda describing unacceptable performance, and responses to the appellant's questions concerning performance. *Romero v. Equal Employment Opportunity Commission*, 55 M.S.P.R. 527, 535 (1992), *aff'd*, 22 F.3d 1104 (Fed. Cir. 1994) (Table).

While the administrative judge found that the agency provided content to its performance standards via the NODAP, nothing in the record suggests that the agency cured its vague performance standards prior to the issuance of the NODAP. As discussed above, under *Santos*, the agency must prove that the appellant's pre-PIP performance was deficient, and that rule applies to the appellant's opportunity to demonstrate acceptable performance (the equivalent of a PIP). Thus, absent evidence that the vague performance standards were cured prior to issuance of the NODAP, we cannot find that the agency met its burden.

The agency did not present much evidence concerning, for example, the ways in which it counseled or informed the appellant of her pre-NODAP performance deficiencies regarding preparing budget documents. The appellant's supervisor's 2018 annual performance review notes, dated October 16, 2018, reflect that she discussed with the appellant that the appellant needed to "pick up the pace" and have "less" mistakes. IAF, Tab 26 at 106. Nonetheless, she rated the appellant fully successful in all critical elements as well as fully successful overall without any comments or cited deficiencies related to preparing budget reports. IAF, Tab 23 at 152-165. The supervisor's notes of the appellant's April 15, 2019 mid-year performance review reflect that the appellant's supervisor discussed the appellant's needed to work on "completion of telework tasks." IAF, Tab 26 at 145. This was approximately 2 months prior to the issuance of the NODAP. The appellant testified that she had errors in her reports in the past, which were simply returned to her to correct after her supervisor reviewed the report, but that she was still rated fully successful. Hearing Transcript (HT) (June 22, 2021) at 61 (testimony of the appellant); HT (October 14, 2020) at 40-41 (testimony of the appellant). She also testified that she believed her supervisor would continue to review her reports and catch any errors. HT (June 22, 2021) at 60-61 (testimony of the appellant). While the appellant's supervisor may have felt that she was merely being lenient by allowing the appellant to make errors but still be rated fully successful for the first 3 years of her employment, HT (June 22, 2021) at 41, 43 (testimony of the appellant's supervisor), nothing in the record reflects that, prior to issuing the NODAP, she communicated to the appellant that after a certain amount of time in the position these same types of errors would be considered unacceptable. To the extent that the appellant was told to pick up the pace and make fewer mistakes, we find such statements failed to clearly inform the appellant of what level of

performance was expected of her.[4] The appellant's supervisor may have had pre-NODAP discussions or email exchanges in which she provided more specific feedback on the appellant's work and performance expectations, but they are not part of the record before us. Thus, we are unable to discern what level of performance the agency expected of the appellant regarding the content and quality of her work.

On review, the agency asserts that the administrative judge erred to the extent she found that the agency failed to show that the appellant's pre-NODAP performance was unacceptable because she concluded that the four instances cited in the NODAP only amounted to a small part of the appellant's job duties. PFR File, Tab 9 at 18. The agency further asserts that, because the appellant's performance standards do not contain any quotas for how many mistakes or incomplete assignments would be acceptable, any conclusion regarding what portion of the job the mistakes constituted would be speculative. *Id.* The administrative judge concluded that, *if* the errors identified in the NODAP constituted a small portion of the appellant's job functions, they would not rise to the level of unacceptable performance, but *if* they constituted more than a small part of her job functions, than a finding of unacceptable performance might be appropriate. ID at 12. We construe such findings as tantamount to concluding that the agency's performance standards fail to provide a firm benchmark by which to gauge the appellant's performance.

In sum, because the agency has not shown that, prior to the NODAP it provided content to the appellant's invalid performance standards, we cannot conclude that the appellant's pre-NODAP performance was unacceptable. Accordingly, we agree with the administrative judge that the agency failed to prove its action.

_____

[4] Notwithstanding the agency's October 2018 direction to the appellant to have "less" mistakes, the expectations outlined by her supervisor in a July 31, 2019 letter appear to leave no room for errors. IAF, Tab 23 at 114.

<u>The appellant proved that discrimination and retaliation were but-for causes of her placement on an opportunity to demonstrate acceptable performance and removal.</u>

As the administrative judge found, the appellant suffered from migraines that substantially limited her major life activities of concentrating and working. ID at 15-16. The administrative judge also found that the appellant engaged in EEO activity when she filed an informal EEO complaint in or around June 2018. ID at 16. However, the appellant also engaged in EEO activity from approximately July 2017 until September 2018, when she repeatedly requested telework as a reasonable accommodation. ID at 18-23; *see Pridgen*, 2022 MSPB 31, ¶ 44 (acknowledging that both requesting a reasonable accommodation and complaining of disability discrimination are protected activities).

On July 18, 2017, the appellant's supervisor informed the appellant of her intent to discontinue the appellant's 1 day a week of telework. IAF, Tab 27 at 18-19. In response, the appellant met with her supervisor to discuss her medical diagnoses and explain how telework was helpful due to her medical conditions. HT (October 14, 2020) at 25 (testimony of the appellant). Thereafter, on August 2, 2017, the appellant submitted a 2015 letter from her medical provider in support of her telework request [5] IAF, Tab 27 at 24. The appellant's supervisor requested an updated letter because the 2015 letter was over 2 years old and on August 18, 2017, the appellant submitted an August 4, 2017 letter in support of what she described as her doctor's first instruction for 2 days of telework. IAF, Tab 9 at 13-14; Tab 27 at 24; ID at 20. The 2017 letter identified

_____

[5] As the administrative judge explained, it is unclear which of two 2015 letters the appellant submitted. ID at 18-19. A September 1, 2015 letter stated that the appellant suffered from chronic migraines and that after an episode "she requires quiet and decreased light exposure for up to two days. She should be allowed to work from home during these periods. The episodes have been occurring as frequently as one per week. This would involve four days of telework every two weeks." IAF, Tab 9 at 16. An October 27, 2015 letter was less specific about the need for telework, but noted that the appellant's migraines lasted 1-2 days, the recovery period was up to 2 days and a fixed telework agreement would improve attendance and concentration and aid in migraine prevention. IAF, Tab 27 at 26.

various migraine triggers, noted the appellant's migraines lasted 1-2 days, with a 2-day recovery period, and recommended that the appellant be granted a fixed telework agreement to improve attendance and concentration as well as aid in migraine prevention. IAF, Tab 9 at 14. In response, the appellant's supervisor permitted the appellant to keep teleworking 1 day a week. HT (September 30, 2020) at 79 (testimony of the appellant's supervisor).

On August 28, 2018, the appellant again requested 2 days of telework, which her supervisor denied on September 11, 2018. IAF, Tab 26 at 14. The appellant requested reconsideration, reiterating that it was for a medical accommodation for her migraines. *Id.* at 12. Her supervisor denied this request on September 25, 2018, noting that "telework is at management's discretion," that she had the right to deny it, she was not approving any additional telework until the appellant's performance improved, and the appellant's current medical documentation was insufficient.[6] *Id.* The following day, the appellant's supervisor issued the appellant a letter requesting additional medical documentation. IAF, Tab 27 at 173. She also issued the appellant a letter of caution after the appellant teleworked without authorization during a migraine recovery period. IAF, Tab 17 at 13-15.

The administrative judge found that the appellant proved that her disability and EEO activity were motivating factors in her supervisor's decision to place her on an opportunity to demonstrate acceptable performance. ID at 13-29. Among other things, the administrative judge found that other similarly situated non-disabled employees were permitted to telework 2 days a week while the appellant's requests to do so as a reasonable accommodation was repeatedly

---

[6] The appellant's supervisor also stated that she had requested a new medical letter in June 2018. IAF, Tab 26 at 12. However, such a request appears to have related to a different request for reasonable accommodation which was the subject of a July 19, 2018 mediation. IAF, Tab 27 at 173. The appellant had requested to drive rather than to fly for work travel due to her migraines. IAF, Tab 9 at 17-19. She filed an EEO complaint alleging disability discrimination when she was paid a reduced mileage rate. IAF, Tab 17 at 9.

denied. ID at 24-25. The administrative judge declined to credit the appellant's supervisor's explanation that the difference in treatment was due to the appellant's performance deficiencies. Rather, the administrative judge found that such an explanation was pretext because the appellant's supervisor admitted that she never held the appellant's purported performance problems against the appellant in her performance ratings. ID at 25.

After finding that the appellant proved motivating factor, the administrative judge next considered whether the agency proved that it would have removed the appellant absent the impermissible motivating factor. ID at 29. However, after the issuance of the initial decision, the Board issued *Pridgen*, 2022 MSPB 31, in which it clarified that claims of reprisal for engaging in disability-based EEO activity are not subject to the motivating factor standard, but rather they are exclusively subject to the but-for standard. *Id.*, ¶¶ 44-47. As set forth below, we modify the initial decision to apply the proper burdens of proof and to find that the appellant proved that disability discrimination and reprisal for engaging in EEO activity were a but-for cause of the agency's decision to place her on an opportunity to demonstrate acceptable performance plan. Because the facts surrounding the appellant's claims of status-based disability discrimination and EEO reprisal are intertwined we consider them together, as the administrative judge did.

The U.S. Supreme Court has explained that "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1739, (2020). Although the administrative judge did not have the benefit of *Pridgen* at the time she issued the initial decision in this matter, she nonetheless made the relevant fact findings. First, the administrative judge made demeanor-based credibility findings that: (1) the appellant's supervisor's testimony that the appellant's claimed disabilities and protected EEO activities played no role in the decision to issue the NODAP and propose the appellant's

removal was not credible; and (2) that the supervisor's demeanor was "one of disdain towards the appellant and admitted disbelief in the health problems caused by the appellant's disabilities."[7] ID at 6. The administrative judge further found that the appellant's supervisor, who also suffered from migraines but to a less severe degree, allowed her own experience with migraines to prejudice her view of the appellant's situation and her decisions related to the appellant's requests for reasonable accommodation. ID at 6-7. Ultimately, the administrative judge found that the evidence of the appellant's supervisor's discriminatory and retaliatory intent was far too overwhelming to justify any conclusion that the agency would have placed the appellant on an opportunity to demonstrate acceptable performance plan absent such discriminatory and retaliatory motives. ID at 29. Such findings support a conclusion of but-for causation. *See Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 18 (holding that, if an appellant proves motivating factor and the agency does not prove that it would have taken the same action in the absence of discrimination, the appellant has established but-for causation and will be eligible for full relief under the statute).

On review, the agency asserts that the appellant's medical documentation did not mandate that the appellant telework 2 days per week and that the appellant was not entitled to an accommodation of her choice. PFR File, Tab 9 at 10-11. However, such arguments fail to establish error in the administrative judge's findings that other similarly situated non-disabled employees were permitted to telework 2 days per week. ID at 24-25. Additionally, the agency argues that the appellant was offered the option to telework 2 days per week during the 30-day opportunity to demonstrate acceptable performance period beginning on June 24, 2019, but the appellant declined. PFR File, Tab 9 at 13. Contrary to the agency's

---

[7] The appellant's supervisor's view of the appellant's medical condition is also reflected in a June 27, 2018 email to an agency employee relations employee in which the supervisor wrote that she believed that the appellant would use her migraines "as an excuse." IAF, Tab 17 at 8.

argument, we find that this supports the administrative judge's findings. The appellant's supervisor testified that when she presented the appellant with the NODAP she said to her, "hey if a second day of telework would help you be successful, if you feel like it would, then you can have it during the period of the NODAP." HT (October 1, 2020) at 90 (testimony of the appellant's supervisor). However, for close to 2 years prior to that, beginning in July 2017, the appellant had repeatedly asked for, but was denied, a second telework day as a reasonable accommodation. It is unclear why during the opportunity to demonstrate acceptable performance the appellant could have been permitted to telework 2 days a week, when for 2 years prior such requests were repeatedly denied. Thus, we agree with the administrative judge's finding the appellant's supervisor's assertion that the appellant could not effectively telework 2 days a week due to performance issues is not worthy of belief. We further agree with the administrative judge that the appellant's supervisor's disparate treatment of the appellant regarding telework as well as her comments and admitted lack of belief regarding the effect of the appellant's migraines compel a finding that the appellant's disability was a but-for cause of the appellant's placement on the opportunity to demonstrate acceptable performance and removal. ID at 6, 17, 24-27.

## The appellant proved that the agency denied her a reasonable accommodation.

The administrative judge did not analyze the appellant's claim of denial of reasonable accommodation as a separate affirmative defense, but rather as evidence of disparate treatment in support of the appellant's status-based disability discrimination claim. ID at 25. Nonetheless, in evaluating the appellant's claim, the administrative judge found that the agency denied the appellant a reasonable accommodation by not allowing her to telework during migraine recovery periods. ID at 27. Because the appellant raised a separate claim of disability discrimination based on a denial of reasonable accommodation, IAF, Tab 9 at 4-5, Tab 27 at 5, as set forth below, we modify the

initial decision to address her claim under the proper legal standards. *See Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 27 (acknowledging disability discrimination claims based on disparate treatment and denial of reasonable accommodation as distinct claims).

An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. 29 C.F.R. § 1630.9(a); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014). Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. *Miller*, 121 M.S.P.R. 189, ¶ 13; Equal Employment Opportunity Commission (EEOC) Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, Notice No. 915.002 (Oct. 17, 2002), *available at* http://www.eeoc.gov/policy/docs/accommodation.html. In order to establish disability discrimination based on a failure to accommodate, an employee must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller*, 121 M.S.P.R. 189, ¶ 13.

Here, as discussed, the appellant is disabled as she suffers from migraines which substantially limit her major life activities of concentrating and working. ID at 15-16. To the extent the administrative judge did not address whether the appellant was a qualified individual with a disability, we explicitly find that she was qualified because a required element of a disability discrimination claim is that an individual be "qualified." *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28 (noting that both a claim of disability discrimination based on an individual's status as disabled and a claim based on an agency's failure to

reasonably accommodate that disability require that the individual be "qualified"). The record reflects that the appellant could perform the essential functions of her position with or without an accommodation of an additional telework/flexible schedule to aid in the prevention of and to accommodate her recovery from migraines. The agency has not shown that, at the time it placed the appellant on an opportunity to demonstrate acceptable performance plan, the appellant's performance was unacceptable or that she was not meeting its performance standards. Moreover, the appellant requested a reasonable accommodation that would have effectively allowed her to perform the essential functions of her job. Her doctor recommended telework to aid in concentration and prevent migraines. IAF, Tab 9 at 14, 16, Tab 27 at 26. The appellant also testified that telework was useful in preventing migraines because she could control the environment and it aided in her concentration and focus. HT (October 14, 2020) at 34 (testimony of the appellant). There is no dispute that the essential functions of the appellant's job could have been performed via telework 2 days a week and that the appellant's similarly situated non-disabled colleagues did so. ID at 25; IAF, Tab 27 at 12.

We find that the agency has not shown that it would have been an undue hardship to grant the appellant's request. To the contrary, the agency offered the appellant the option to telework 2 days a week during the opportunity to demonstrate acceptable performance, purportedly to aid her performance. HT (October 1, 2020) at 90 (testimony of the appellant's supervisor). Yet, prior to that, the agency repeatedly denied the appellant's requests for reasonable accommodation by providing shifting explanations. As the administrative judge summarized, when the appellant initially provided a medical note in August 2017 seeking telework, her supervisor expressed no problem with its substance, but only with its date, and requested a more recent medical note. ID at 27; IAF, Tab 27 at 24. After the appellant provided an updated medical note, it was not until more than a year later that the appellant's supervisor described the

appellant's medical documentation as insufficient. ID at 27; IAF, Tab 9 at 13, Tab 26 at 12, Tab 27 at 173. Moreover, the appellant's supervisor also failed to treat the appellant's requests to telework as requests for reasonable accommodation, even though they were supported by medical notes, and, as discussed previously, denied such requests based on improper considerations such as agency policy, management discretion, and alleged performance issues. IAF, Tab 26 at 12. It is clear from the appellant's supervisor's responses that she was unwilling to discuss the appellant's request in good faith or engage in the interactive process due to the appellant's alleged performance problems. However, an employer cannot refuse to discuss a request for accommodation or fail to provide a reasonable accommodation as a punishment for performance problems. *See* EEOC Guidance: Applying Performance and Conduct Standards to Employees with Disabilities, at III.A.6 (Sept. 3, 2008), https://www.eeoc.gov/laws/guidance/applying-performance-and-conduct-standards-employees-disabilities#perf (last visited Feb. 22, 2024).

In addition to denying the appellant's requests to telework, the appellant's supervisor also issued her a letter of caution after the appellant informed her that she planned to follow her doctor's note and telework during a migraine recovery period. IAF, Tab 17 at 13-15. The letter of caution cites various agency policies that afford supervisors discretion regarding telework. *Id.* at 14. However, an agency is not permitted to rely on its policies to deny an accommodation. Rather, modifying workplace policies, including work schedules and telework, is a form of reasonable accommodation. EEOC Guidance, Work at Home/Telework as a Reasonable Accommodation, Questions 1, 4, (Feb. 3, 2003), *available at* http://www.eeoc.gov/facts/telework.html; EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, Notice No. 915.002, Question 34 (Oct. 17, 2002), *available at* http://www.eeoc.gov/policy/docs/accommodation.html.

On review, the agency asserts that any conclusion that the appellant's medical documentation mandated 2 telework days a week is both a mistake of fact and a mistake of law because an employee is not entitled to an accommodation of her choice. PFR File, Tab 9 at 11. While we acknowledge that the appellant was not entitled to an accommodation of her choice, she was asking to telework as a reasonable accommodation and if the agency did not want to grant the appellant's request for telework, it was obligated to engage in the interactive process to see whether there was another effective accommodation. Appendix to 29 C.F.R. part 1630, § 1630.9 (stating that if more than one accommodation will enable an individual to perform the essential functions of her position, the preference of the individual with the disability should be given primary consideration, but the employer providing the accommodation has the ultimate discretion to choose between effective accommodations). Instead of engaging in the interactive process or granting the appellant's request for telework, the appellant's supervisor improperly forced her to use leave, writing "I would never deny your use of sick leave for the recovery of a migraine" and "if you are unable to come into the office to perform the duties of your position, you should request sick leave." IAF, Tab 17 at 13. We agree with the administrative judge that, to the extent the appellant's supervisor believed that she had accommodated the appellant by allowing her to take sick leave, forcing an employee to take leave is not an appropriate accommodation when there is an effective reasonable accommodation that enables the individual to continue working. *See, e.g.*, *Annie F. v. Department of Homeland Security*, EEOC Appeal No. 2022001221, 2023 WL 3040349, at *9 (Apr. 13, 2023); *Denese G. v. Department of the Treasury*, EEOC Appeal No. 0120141118, 2016 WL 7742966, at *16 (Dec. 29, 2016).[8]

The agency also asserts that the appellant failed to engage in the interactive process and provide additional medical documentation in response to its

---

[8] The Board will defer to the Equal Employment Opportunity Commission on matters of substantive discrimination law. *Pridgen*, 2022 MSPB 31, ¶ 40; *Southerland v. Department of Defense*, 122 M.S.P.R. 51, ¶ 12 (2014).

September 2018 letter.  PFR File, Tab 9 at 12.  We find this argument unpersuasive because, as discussed above, similarly situated non-disabled employees were allowed to telework without providing any medical documentation and, the agency provided shifting explanations for denying the appellant telework.  In addition, the agency delayed for over 1 year before requesting additional medical documentation, and the agency offered the appellant 2 days of telework during the opportunity to demonstrate acceptable performance without requiring any medical documentation.  Accordingly, we find that the agency did not timely engage in the interactive process in good faith and its request for additional medical documentation amounted to an obstacle that was not required of other similarly situated non-disabled employees.  *See Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995, at \*12 (D.D.C. Oct. 27, 2022) (acknowledging that obstruction or delay of the interactive process or failure to communicate is suggestive of bad faith); *see also Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021-22 (8th Cir. 2000) (reversing the district court's grant of summary judgment because an employer may not have participated in good faith in attempting to find an accommodation).[9]  Moreover, we find that the agency's failure to engage in the interactive process resulted in the denial of an effective accommodation.  *See Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1137-39 (9th Cir. 2001) (finding an employer liable for denial of reasonable accommodation when it failed to engage in the interactive process which cause the denial of an effective accommodation).

In sum, we modify the initial decision to reverse the appellant's removal on the basis that the agency failed to show that the appellant's pre-NODAP performance was unacceptable because it did not show that, prior to the NODAP, it provided content to the appellant's invalid performance standards.  We further

---

[9] Decisions of courts other than the U.S. Court of Appeals for the Federal Circuit, although not binding on the Board outside the context of certain whistleblower reprisal cases, may be followed if, as here, the Board finds the reasoning persuasive.  *See Mynard v. Office of Personnel Management*, 108 M.S.P.R. 58, ¶ 14 (2008).

modify the initial decision to apply the burdens set forth in *Pridgen*, 2022 MSPB 31, and find that the appellant proved that disability discrimination and retaliation were a but-for cause of the appellant's placement on the opportunity to demonstrate acceptable performance plan and her removal. Finally, we modify the initial decision to find that the appellant proved that the agency denied her a reasonable accommodation.

## ORDER

We ORDER the agency to cancel the appellant's removal and to restore the appellant effective November 9, 2019. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition

should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at

42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board,* 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:        _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.